IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAZAN CADIR DEVESA RODRIGUEZ,

        Petitioner,

       v.                                                                Case No. 2:26-cv-00007-KWR-KRS

MELISSA ORTIZ, *in her official capacity as*
*Acting Warden of the Torrance County Detention Center*,
MARISA FLORES, *in her official capacity as*
*Acting Director of Immigration and Customs Enforcement's*
*Enforcement and Removal Operations El Paso Field Office*,
TODD LYONS, *in his official capacity as*
*Acting Director of Immigration and Customs Enforcement*,
KRISTI NOEM, *in her official capacity as*
*Secretary of the Department of Homeland Security*,
PAMELA BONDI, *in her official capacity as Attorney General*,
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

        Respondents.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (**Doc. 1**) and Respondents' Motion to Dismiss (**Doc. 13**). Having reviewed the parties' pleadings and the relevant law, the Court finds that the Petition is well-taken and therefore is **GRANTED in part**. Respondents' Motion is **DENIED**. The Court orders Respondents to hold an individualized bond hearing for Petitioner within **five (5) days** of the entry of this order.

## BACKGROUND

      Petitioner Jazan Cadir Devesa Rodriguez is a citizen of Cuba who entered the United States in November 2023. Doc. 1 ¶ 45;[1] Doc. 1-3 at 2 (Record of Deportable/Inadmissible Alien).

---

[1] The Petition's paragraph numbers are off by one digit due to the presence of two Paragraph 1s. To prevent confusion, the Court will cite to the paragraph numbers as they appear in the Petition.

Upon entry with CPB One, the United States Department of Homeland Security granted him parole and placed him in removal proceedings. Doc. 1 ¶ 1. In November 2024, Petitioner filed for an adjustment of status under the Cuban Adjustment Act, which is currently pending. *Id.* ¶ 50. In April 2025, DHS revoked Petitioner's parole when it terminated the parole program for inadmissible noncitizens from Cuba. *Id.* ¶ 47.

On June 21, 2025, Petitioner was arrested while traveling to work and subsequently detained. Doc. 1 ¶ 48. On June 22, 2025, DHS initiated removal proceedings under section 240 of the Immigration and Nationality Act ("INA"), classifying him as an alien who has been "admitted to the United States." *Id.* ¶ 55; Doc. 1-4 at 2 (Notice to Appear).

On July 16, 2025, an immigration judge denied Petitioner's request for a custody redetermination because Petitioner was an "arriving alien" and the judge lacked jurisdiction. Doc. 1 ¶¶ 5, 54. Two weeks later, Petitioner was reclassified as an "arriving alien." *Id.* ¶ 56; Doc. 1-5 (Additional Charges of Inadmissibility/Deportability). Petitioner's subsequent request for a bond hearing was also denied. Doc. 1 ¶ 58.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lacked authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado*, 29 I & N Dec. 216, 225 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). As of the date of the Petition, Petitioner is detained at the Torrance County Detention Center in New Mexico without a bond hearing. Doc. 1 ¶¶ 48, 60.

In sum, Petitioner asserts that he has remained in federal immigration custody without an opportunity to post bond or request a conditional release because his detention has been classified as mandatory under 8 U.S.C. § 1225(b)(2)(A). Petitioner requests that the Court issue a writ of

habeas corpus requiring Respondents to (1) release Petitioner or (2) conduct an individualized bond hearing.

The Court ordered Respondents to file an answer. Doc. 3. It ordered that "[t]he answer must address the merits of the Petition and attach all relevant evidence or documents Respondents wish the Court to consider." *Id.* at 7. The Court further warned that it may construe a motion to dismiss as an answer "and grant or deny habeas relief without ordering a further answer." *Id.* Respondents filed a Motion to Dismiss. Since the Court finds that the Petition may be granted in part based on the filings on the record, it will issue a decision without waiting for further briefing.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## DISCUSSION

Petitioner asserts he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). He argues that he is improperly detained pursuant to 8 U.S.C. § 1225(b)(2)(A), and that he is instead entitled to release or a bond hearing under 8 U.S.C. § 1226(a). As explained below, Petitioner, who has lived in the United States for years, is subject to the discretionary detention provisions of § 1226(a) and is therefore entitled to a bond hearing before an immigration judge.

3

I.      **Petitioner is not detained under § 1225(b)(1).**

Respondents assert that Petitioner is subject to mandatory detention pursuant to § 1225(b)(1)(B)(iii)(IV). Doc. 13 at 1. But Respondents did not provide evidence that he was placed in expedited removal proceedings. Rather, the evidence produced by Petitioner suggests that he was *not* placed in expedited removal proceedings.

Section 1225(b)(1) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). This is commonly referred to as expedited removal. "An applicant is subject to expedited removal if, as relevant here, the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not 'been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility'; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. §§ 1225(b)(1)(A)(i), (iii)(I)–(II)." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). Noncitizens subject to § 1225(b)(1) potentially face mandatory detention. § 1225(b)(1)(B)(ii), (iii)(IV).

Under 8 U.S.C. § 1252(e)(2), a district court is restricted in habeas corpus proceedings from evaluating any questions related to an order for expedited removal outside of three inquiries listed as follows: (1) whether the petitioner is an alien; (2) whether a petitioner was ordered removed under § 1225(b)(1); and (3) whether the petitioner is a lawful permanent resident, refugee, or asylee. § 1252(e)(2); *Vaupel v. Ortiz*, 244 F. App'x 892, 895 (10th Cir. 2007).

Here, Respondents have not expressly argued or presented evidence that Petitioner is currently being processed under the expedited removal provisions. Rather, the only evidence in

the record suggests that he was *not* placed in expedited removal proceedings. Petitioner placed into the record a June 2025 Notice to Appear that cites Section 240 of the INA. *See* Doc. 1-4. This refers to removal proceedings under § 1229a, not the expedited removal proceedings under § 1225(b)(1). Thus, Petitioner was not placed in expedited removal proceedings when he was detained in June 2025. Moreover, in the Notice to Appear, the box for "arriving alien" was left unchecked, and instead Respondents checked the box "You have been admitted to the United States, but are removable for the reasons stated below." Doc. 1-4 at 2. This also suggests that Petitioner was not initially placed in expedited removal proceedings because he was not treated as an arriving alien.

Respondents do not provide any evidence that expedited removal proceedings commenced after Petitioner's status was changed to "arriving alien" in July 2025. And the form changing Petitioner to "arriving alien" contradicts any such assertion since the box that Petitioner was in removal proceedings under Section 240 of the INA is checked. Doc. 1-5.

As explained by Judge Yarbrough,

> Here, upon initial entry, Mr. Vazquez Paredes may have been a candidate for expedited removal under Section 1225(b)(1) as he was inadmissible under Section 1182(a)(7) due to a lack of valid entry documents. *See* Doc. 6-1. However, the government did not originally place Mr. Vazquez Paredes in expedited removal proceedings, instead placing him in full Section 240 removal proceedings.
> . . .
> Mr. Vazquez Paredes cannot be in both full 240 proceedings and expedited proceedings at the same time. *See Patel v. Tindall*, No. 3:25-CV-373-RGJ, 2025 WL 2823607, at *5 (W.D. Ky. Oct. 3, 2025) (collecting cases and noting that "Respondents in other cases have conceded that an individual cannot be in two removal proceedings simultaneously"). Thus, "even if § 1225(b)(1) could—as a general matter—apply to [Mr. Vazquez Paredes], he is not currently subject to expedited removal proceedings and thus is not subject to § 1225(b)(1)'s detention provisions. Respondents cannot detain [Mr. Vazquez Paredes] in connection with expedited removal proceedings that do not exist." *Fadeev v. Lyons*, No. SA-25-CA-01758-XR, 2026 WL 93147, at *4 (W.D. Tex. Jan. 7, 2026).

5

*Vazquez Paredes v. Warden*, No. 26-cv-6-MIS-SCY, 2026 WL 222317, at *5 (D.N.M. Jan. 28, 2026).

Moreover, the mere act of seeking asylum would not automatically place Petitioner in expedited removal proceedings. For example, a Petitioner may seek asylum as follows:

> (1) if [he] is not in any kind of removal proceeding, [he] may file an affirmative application for asylum, *see* 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.1(a)(1); (2) if [he] is subject to regular removal proceedings under 8 U.S.C. § 1229a, [he] may file a defensive application for asylum as a defense to removal, *see* 8 U.S.C. § 1229a(c)(4); 8 C.F.R. § 208.2(b); or (3) if [he] is subject to expedited removal proceedings under 8 U.S.C. § 1225, [he] may also file a defensive application for asylum as a defense to expedited removal, *see* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 208.30(f).

*O.A. v. Trump*, 404 F. Supp. 3d 109, 121 (D.D.C. 2019). Here, neither party has presented evidence that Petitioner filed asylum in response to expedited removal proceedings under § 1225(b)(1).

Thus, Petitioner is not subject to mandatory detention under § 1225(b)(1). Accordingly, the Court agrees with Petitioner that it has jurisdiction over the narrow detention issue in the Petition, *i.e.*, determining whether mandatory detention under § 1225(b)(2)(A) applies or discretionary detention under § 1226(a) applies pending a decision on Petitioner's removal.

### III.     Whether mandatory detention under § 1225(b)(2)(A) or discretionary detention under § 1226(a) applies.

At issue is whether § 1225(b)(2)(A) or § 1226(a) governs Petitioner's detention while a decision on his removal is pending. Mandatory detention under § 1225(b)(2)(A) applies to noncitizens "seeking admission" into the United States. Petitioner asserts that he is entitled to a bond hearing or immediate release pursuant to § 1226(a), as he has been residing in the United States and is not "seeking admission" into the United States. Despite this statutory language, Respondents argue that the mandatory detention provision under § 1225(b)(2)(A) applies, as that provision covers not only those who present themselves at the border, but any noncitizen who is

present in the United States without admission, pending a decision on removal. *See, e.g.*, *Matter of Yajure Hurtado*, 29 I & N at 225 ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). As explained below, the statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for years. Therefore, Petitioner is entitled to a bond hearing under § 1226(a).

In construing the statute at issue, the Court begins with its plain text. *See Chickasaw Nation v. United States*, 208 F.3d 871, 876 (10th Cir. 2000). "If the terms of the statute are clear and unambiguous, they are controlling absent rare and exceptional circumstances." *Id*. In ascertaining the meaning of the text, the Court considers the "language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1381 (10th Cir. 2009) ("We also take into account the broader context of the statute as a whole when ascertaining the meaning of a particular provision."). The Court also considers traditional canons of statutory interpretation. *Conrad*, 585 F.3d at 1381; *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011). Generally, the Court only considers non-textual evidence bearing on Congress's intent or purpose, such as legislative history, if statutory language is ambiguous. *See, e.g.*, *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008).

The INA generally contemplates two detention regimes for noncitizens pending a decision on removal. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). The first detention regime provides that when "an applicant for admission" is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be detained" for removal proceedings. 8 U.S.C. § 1225(b)(2)(A). This provision mandates detention and does not expressly afford a bond hearing. *Id.* Section 1225 has exceptions to mandatory detention, which are not

7

relevant here. The second detention regime authorizes the arrest and detention "on a warrant issued by the Attorney General" of noncitizens "pending a decision on whether [they are] to be removed." 8 U.S.C. § 1226(a). Section 1226(a) expressly authorizes the Attorney General to detain the arrested noncitizen, or release them on bond or conditional parole. *Id.* Section 1226(c) has certain exceptions which mandate detention. For example, mandatory detention under § 1226(c) applies to a noncitizen who is (1) "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General" and (2) "charged with, is arrested for, is convicted of, admits having committed" certain criminal acts. § 1226(c)(1)(E).

Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added), *quoted in Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (concluding that § 1226(a) applied to noncitizens already present in country who were not admitted).

Thus, for § 1225(b)(2)(A)'s mandatory detention proceedings to apply, the Court must find as follows: (1) the noncitizen is "an applicant for admission," (2) who is "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted."

Here, Petitioner is likely an applicant for admission under the statute. An "applicant for admission" is defined as "an alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Because Petitioner is present

8

in the United States and has not been admitted, he may be deemed by the statute to be an "applicant for admission," satisfying the first criteria of § 1225(b)(2)(A).

But the detention provision under § 1225(b)(2)(A) applies only to noncitizens "seeking admission." § 1225(b)(2)(A). As explained below, under the plain meaning of the statute, Petitioner, who has been residing in the United States, is not "seeking admission." *Id.* "Admission" is defined as "the lawful entry of the noncitizen into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). The term "entry" is undefined in the statute. And Respondents do not argue that "entry" has any technical meaning in the statutory provisions at issue. Assuming it has no technical meaning, it can be given its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotation marks omitted); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning.").

"Entry" most commonly means "[t]he action or an act of entering a place, area, building, etc." Entry, Oxford English Dictionary (2018); Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/entry (last visited January 21, 2026) ("the act of entering"); Entry, Black's Law Dictionary (12th ed. 2024) ("*Immigration.* Any entrance of an alien into the United States, whether voluntary or involuntary."). "Seeking" in this context most naturally means trying to obtain something or trying to bring about or effect. Seek, Oxford English Dictionary Online (2018). "Seeking" is also in the present participle form, which expresses present action. Present Participle, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/present%20participle (last visited January 21, 2026); *see also Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. Aug. 29, 2025) (The use of the present participle in § 1225(b)(2)(A) "implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Taken together, the "seeking

admission" phrase in § 1225(b)(2)(A) applies to noncitizens who are trying to lawfully and physically enter the country. It does not apply to noncitizens who have lived in the United States for years are not seeking lawful entry into the United States.[2]

Further, "seeking admission" is not coterminous with "applicants for admission." Such construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1061 (7th Cir. 2025), *citing United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."). "If an interpretation of one provision 'would render another provision superfluous,' courts presume that interpretation is incorrect." *Castanon-Nava,* 161 F.4th at 1061 (quoting in part *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). "And this presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting in part *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Therefore, the Court declines to interpret "seeking admission" in a manner wholly synonymous with "applicant for admission."

Rather than the two phrases being synonymous, the statutory language elsewhere in § 1225 appears to distinguish the phrase "applicants for admission" from the phrase "seeking admission,"

---

[2] The Court's understanding of the plain, ordinary meaning of the word "entry" in this statute, *i.e.*, that entry means the physical entry into the country, accords with how it is understood and used by the United States Supreme Court in the immigration context. The word "entry" has long been used to refer to physically going into the country, regardless of whether they are legally in the United States. *See, e.g., Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

suggesting that these phrases have separate meanings. Section § 1225(a)(3) provides that "All aliens . . . *who are applicants for admission or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." *Id.* (emphasis added). The word "or" in its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)). Taken together, "or otherwise" is "used to refer to something that is different from something already mentioned." *Or otherwise*, Merriam Webster Online, https://www.merriam-webster.com/dictionary/or%20otherwise (last visited January 12, 2026). If "applicant for admission" had the same meaning as "seeking admission", there would be no need to repeat the phrase "seeking admission" or use the phrase "or otherwise." Thus, it is clear that the phrases "applicants for admission" and "seeking admission" do not have the same meaning.

Interpretating the two phrases as synonymous would also render superfluous recent amendments to § 1226(c). Section 1226(c)(1)(E) mandates detention for certain noncitizens who are implicated in certain crimes. Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (1) who is inadmissible under § 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (2) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E). Under this interpretation, all noncitizen who are present in the country without being admitted or paroled must already be mandatorily detained under § 1225(b)(2)(A), rendering the recent amendment superfluous. Generally, courts "do not lightly" find that Congress adopted "two separate clauses in the same law to perform the same work." *United States v. Taylor*, 596 U.S. 845, 857 (2022).

11

Moreover, the context of the statute surrounding § 1225(b)(2)(A) is clear that it generally applies to arriving noncitizens, not those already present for years. *See King v. Burwell*, 576 U.S. 473, 486 (2015) (explaining that courts "must read the words in their context and with a view to their place in the overall statutory scheme" (citation and internal quotation marks omitted)); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a 'duty to construe statutes, not isolated provisions.'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995))).

The Court's interpretation of § 1225(b)(2)(A) is consistent with the decisions of multiple courts, which have found that under its ordinary meaning, a person who has been present in the United States is not "seeking admission" and therefore not subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Castanon-Nava*, 161 F.4th at 1061; *see also Barco Mercado v. Francis*, No. 25-CV-6582-LAK, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (collecting cases in Appendix A); *Pu Sacvin v. Ybarra*, No. 2:25-CV-1031-KG, 2025 WL 3187432, at *3 (D. N.M. Nov. 14, 2025) ("Noncitizens seeking admission are those who have not effected an entry into the United States.") (quotation marks omitted); *Buenrostro-Mendez v. Pamela Bondi*, __F.4th _, 2026 WL 323330, at *10 (5th Cir. 2026) (Douglas, J., dissenting).

The Court's interpretation is also consistent with the United States Supreme Court's dicta. In *Jennings*, the Supreme Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." 583 U.S. at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a) creates a default rule for those aliens [present in the United States] by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits

12

the Attorney General to release those aliens on bond." *Id.* The *Jennings* Court's description of the relationship between §§ 1225 and 1226 is consistent with the Court's conclusion.

Because the statutory language is unambiguous, the Court's task is to ascertain its plain meaning, and it generally should not address extra-textual policy consideration, like any uneven treatment between noncitizens who pass with inspection and noncitizens who pass without inspection. *See McGraw v. Barnhart*, 450 F.3d 493, 499 (10th Cir. 2006). Alternatively, this seemingly different treatment of those who have resided unlawfully in the United States is well-supported in case law. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas*, 533 U.S. at 693; *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Here, applying the above statutory interpretation to the facts of this case, it is clear that Petitioner is not "seeking admission" under § 1225(b)(2)(A). He has lived in the United States since 2023. And neither the Petition nor Respondents' Motion identified any facts to suggest Petitioner was "seeking admission", *i.e.*, lawful physical entry into the country, at the time of his arrest. Therefore, it is clear that the detention provision under § 1225(b)(2)(A) does not apply to Petitioner.

Instead, Section 1226(a), the default, more general detention provision pending a decision on removal, governs Petitioner's detention. "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings*, 583 U.S. at 288. Thus, the Court grants in part the Petition.

13

## IV. **The Court finds that a bond hearing, rather than immediate release, is the appropriate remedy.**

Petitioner requests immediate release or a bond hearing before the immigration court. Doc. 1 at 18.

The Court concludes that in this case it should order a bond hearing rather than immediate release, as ordering immediate release would result in the Court taking away Respondents' discretionary decision. Section 1226(a) gives Respondents discretion to either detain a noncitizen, release the noncitizen on bond, or place them on parole. Generally, a release or bond decision is discretionary. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.").

To be sure, federal district courts have broad equitable powers in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus*." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (citation omitted). In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243. Although Section 1226(e) may restrict some court review, it does not expressly prohibit habeas review of detention decisions. Assuming the Court has authority to order Petitioner's immediate release, the Court in its discretion would order a bond hearing, as a bond hearing would provide Petitioner with the process he is due under the statute. *See* § 1226(a) (providing that the Attorney General *may* continue to detain a noncitizens pending a decision on removal or *may* release the noncitizen on bond or parole). Therefore, the Court will order that Respondents hold a bond hearing within **five (5) days** of the entry of this order.

14

## V. This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226. Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted). During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that the Petition is moot or that the Court lacks jurisdiction to rule on the Petition because § 1231 applies. At issue in the Petition was whether §§ 1225 or 1226 applied to Petitioner's detention pending a decision on removal. Petitioner asserts that § 1226 applies, while Respondents assert that § 1225 applies. No party has alleged that any removal proceedings have become final. Therefore, as of the entry of this order, it appears that the Court

15

retains the ability to order the relief requested in the Petition, *i.e.*, to determine whether §§ 1225 or 1226 applies to his detention pending a decision on removal. However, no party has briefed the issue of detention under § 1231, and detention under § 1231 is not at issue in the Petition. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## VI. The Court need not rule on Petitioner's remaining claims.

In addition to requesting habeas relief, Petitioner also asserted that his detention violates due process and requested that the Court declare his detention unlawful. Because the Court will grant habeas relief, the Court need not address his other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim).

## VII. Attorney's Costs and Fees under the EAJA.

Finally, Petitioner requests that the Court award attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). Considering recent Tenth Circuit precedent and the relevant procedure, the Court finds that it may consider Petitioner's request for attorney's fees and costs provided that Petitioner follows proper EAJA procedure.

The EAJA provides for the following procedure:

> [A] court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action . . . brought by or against the United States in any

>court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The Tenth Circuit recently held that the EAJA "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1159, 1166 (10th Cir. 2025).

A fee award is required if (1) the petitioner prevails, (2) the Government's position was not "substantially justified," and (3) there are no special circumstances rendering an award of fees unjust. *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting § 2412(d)(1)(A)). While fees are authorized, the EAJA requires that Petitioner, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses," and an allegation demonstrating that "the position of the United States was not substantially justified." § 2412(d)(1)(A), (B). Upon filing this application, the Government must justify its position in any underlying proceedings and district court litigation. *See Hackett*, 475 F.3d at 1170.

Since the Court grants Petitioner habeas relief, should Petitioner continue to pursue costs and fees, Petitioner is instructed to file an EAJA application following the appropriate procedure.

## CONCLUSION

The Court concludes that Petitioner's detention pending a decision on whether he should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b)(2)(A). Accordingly, the Petition (Doc. 1) is granted in part. Respondents are directed to arrange individualized bond hearings pursuant to § 1226(a) for Petitioner before an immigration judge within **five (5) days** of the entry of this Order. **Respondents shall not deny Petitioner bond on the basis that § 1225(b) requires mandatory detention.** However, the Court makes no determination whether or when in the future § 1231 applies to his detention, as it was not briefed

or raised in the Petition or in the Motion to Dismiss. The parties are ordered to file a status report within **seven days** of the entry of this order. The Court will enter a separate judgment.[3]

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 1) is hereby **GRANTED in part** for the reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Respondents Motion to Dismiss (Doc. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that Respondents shall provide a bond hearing before an immigration judge for Petitioner pursuant to § 1226(a), as opposed to § 1225(b), within **five (5) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply.

**IT IS FINALLY ORDERED** that the parties are directed to file a joint status report within **seven (7) days** of the entry of this order.

                                                            /S/
                                              KEA W. RIGGS
                                              UNITED STATES DISTRICT JUDGE

---

[3] The Court need not delay entry of judgment to wait for Respondents to comply with the Court's order. The Court "always retains jurisdiction to enforce its lawful judgments, including habeas judgments." *Gall v. Scroggy*, 603 F.3d 346, 352 (6th Cir. 2010); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (explaining that district court has authority to enforce its habeas judgment).